# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTHONY K. IT**,
    **Plaintiff,**

v.                                                                                            **Case No. 18-C-1640**

**JENNIFER SMITH,**
    **Defendant.**

## DECISION AND ORDER

Plaintiff Anthony K. It, an inmate at the Milwaukee Secure Detention Facility who is representing himself, is proceeding on an excessive force claim based on allegations that, while he was incarcerated at the Milwaukee County Jail, defendant tased his wrist and arm for no reason. ECF No. 14. On January 30, 2020, defendant filed a motion for summary judgment on the ground that plaintiff failed to exhaust the available administrative remedies prior to initiating this lawsuit. ECF No. 34. On April 22, 2020, I found that an evidentiary hearing was necessary to resolve factual disputes regarding whether the administrative remedies were available to plaintiff. ECF No. 64. That hearing occurred via Zoom on March 10, 2021. For the following reasons, I will grant defendant's motion and dismiss this case.

## I. LEGAL STANDARD

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was incarcerated when he filed his complaint. Under the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If a court finds that a prisoner failed to complete any step in the exhaustion process prior to filing a lawsuit, the court must dismiss the prisoner's lawsuit. *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999).

That said, a prisoner is required to exhaust only those administrative remedies that are "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies are "unavailable" when prison officials do not respond to a properly-filed inmate complaint or when they prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, 364 F.App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

## II. ANALYSIS

The process at the jail for submitting a grievance is straightforward. An inmate must complete a written grievance form and, if in general population, place the form in a lockbox or, if in the special needs unit, give it to a corrections officer. ECF No. 37-19 at 2; ECF No. 59 at ¶ 6. Defendant asserts that plaintiff never filed a grievance form; plaintiff asserts that he did. According to plaintiff, he completed a grievance form and gave it to Lieutenant Scott Sobek, who took photographs of his injuries and told plaintiff he would handle the grievance. ECF No. 49 at ¶¶ 22-23, 26; ECF No. 50 at ¶ 104; ECF No. 51 at 23. Plaintiff asserts that Officer Diedra Adams was present when he gave the grievance to Sobek and told plaintiff that what defendant had done to him was wrong. ECF No. 49 at ¶ 24.

At the hearing, defendant called Sobek and Adams as witnesses. Sobek, who was a supervising officer at the time, testified that he had no recollection of plaintiff or the incident at issue. He stated that, according to a schedule from that day, he worked third shift and, as such, was responsible for supervising all the housing units in the jail. He explained that, for several reasons, plaintiff's statements about his involvement were flawed and implausible. According to Sobek, only corrections officers performing security rounds accept grievances from inmates. He explained that a supervising officer accepting a grievance is a good way for a grievance to get lost because collecting these forms are not part of a supervising officer's duties. He also explained that, because the incident occurred on second shift, it is improbable that he would have been involved. Any investigation and documentation of a use

2

Case 2:18-cv-01640-LA   Filed 03/12/21   Page 2 of 5   Document 79

of force incident would have be completed by the supervisor on duty at the time of the incident. Finally, he explained that he was certain that he would never encourage an inmate to pursue legal action against an officer, particularly when he had no direct knowledge of the incident.

Adams, a corrections officer at the time of the incident, testified that she remembered plaintiff, but did not remember the incident at issue. Similar to Sobek, she testified there were several flaws in plaintiff's version of what happened. According to Adams, she did not work on the date of the incident, although she did work the following day. She explained that, for security reasons, she would never take an inmate out of his cell to document injuries. She also asserted that corrections officers do not take photographs of inmates; that responsibility belongs to "AFIS" staff. She also noted that she would never make the statement about defendant that plaintiff attributes to her because she does not talk to inmates about the actions of co-workers.

Plaintiff, who was confined in a restraint chair and wearing a spit mask during the hearing, asked Sobek and Adams only a few questions to confirm that they did not remember the incident or interacting with him about the incident. Plaintiff did not testify about what he remembered happening; instead, he instructed me to make my ruling. After I told him I would issue a written decision, he began to reengage with Sobek. He confirmed Sobek currently works for Veteran Affairs and then cautioned him to take care of the veterans. Plaintiff's demeanor, which had been calm up to that point, abruptly shifted. After I reminded him that he needed to speak slowly because the court reporter could not understand him, he became agitated and began to threaten Sobek, telling him he would "kick his ass." He then said, "When I get out of here…," at which time the court muted him.[1] His institution cut the video feed shortly thereafter, and I concluded the hearing. *See* ECF No. 77.

---

[1] Just over a week ago, District Judge Brett H. Ludwig dismissed two of plaintiff's cases as a sanction for plaintiff's misconduct. In *It v. Duckert*, Case No. 18-cv-1289, during a deposition, It threatened to murder the court reporter, her children, and the police force. In *It v. Milwaukee County*, Case No. 19-cv-779, also during a deposition, plaintiff threatened to ambush and shoot visitors of inmates who had called him names. In light of this recent misconduct, the court was ready to quickly terminate the hearing should plaintiff fail to conduct himself appropriately. *See also* ECF No. 75.

3

Given the witnesses' testimony, I find plaintiff's statements that he gave his grievance to Sobek and that Sobek and Adams criticized defendant's actions and encouraged him to pursue legal action to be too far-fetched to believe. The witnesses explained that supervising officers do not collect grievance forms, corrections officers do not photograph inmates, security considerations prevent staff from unnecessarily removing inmates from their cells, and they never criticize staff's actions to inmates or encourage inmates to file lawsuits. Based on their testimony, I find that plaintiff's assertions that he gave a grievance form to Sobek in Adams' presence are not credible. Plaintiff presents no other evidence supporting a conclusion that he filed a grievance about the incident at issue in this case. As such, I find that he failed to exhaust administrative remedies before he filed his lawsuit.

Finally, I note that plaintiff's behavior was unacceptable, particularly given that two of his cases were recently dismissed for similar misconduct. The Seventh Circuit has noted that district courts have the inherent authority to sanction litigants for abuse of process. *Waivio v. Board of Trustees of Univ. of Ill. at Chicago*, 290 F.App'x 935, 937 (7th Cir. 2008). When considering an appropriate sanction, courts should consider "the ineffectiveness of lesser sanctions, the harm from the misconduct, and weakness of the case." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) (citing cases).

Here, all considerations weigh in favor of dismissal as a sanction. I considered a fine, but plaintiff is indigent and already owes the court a significant amount of money in filing fees. Adding to a debt that plaintiff is unlikely to pay will not impact his behavior. And the harm caused by plaintiff's misconduct is significant. This is the third time that plaintiff has threatened violence in the course of a proceeding. Significant time and resources have been wasted by the court, counsel, and witnesses because the proceedings could not be completed. Also, court reporters doing their job and witnesses executing their duty should never be expected to endure threats to their safety. I acknowledge that plaintiff has mental health issues, but violent threats cannot be tolerated regardless of the challenges that plaintiff faces. Finally, plaintiff's case is weak because, as I already explained, he failed to

exhaust the available administrative remedies before filing his lawsuit. Accordingly, I find that dismissal with prejudice is warranted as a sanction for plaintiff's misconduct.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice** as a sanction for plaintiff's misconduct. The clerk's office shall enter judgment accordingly.

A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend either deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2021.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge